UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GENIENE MOTT,
O/B/O R.C.M. -K


      Plaintiff,                            Civil Action No. 17-12259

v.                                  HON. DENISE PAGE HOOD
                                      U.S. District Judge
                                      HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,


      Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

      Plaintiff Geniene Mott ("Plaintiff") brings this action on behalf of her minor daughter R.C.M.-K. ("Claimant") under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment [Docket #22] be GRANTED, and  that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

## PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of her minor daughter, applied for SSI on March 27, 2014, alleging disability as of June 4, 2013 (Tr. 195).  On August 11, 2015, Administrative Law Judge ("ALJ") Martha M. Gasparovich presided at an administrative hearing held in Livonia, Michigan (Tr. 125).   Claimant (Tr. 131-135) and Plaintiff (Tr. 136-151) testified. On February 5, 2016, ALJ Gasparovich found Claimant not disabled (Tr. 100-120).  On May 19, 2017, the Appeals Council denied review (Tr. 1-4).   Plaintiff filed for judicial review of the final decision on July 11, 2017.

## BACKGROUND FACTS

Claimant, born April 18, 2006, was nine when ALJ Gasparovich issued her decision (Tr. 120, 195).  Plaintiff alleges that her daughter is disabled due to Attention Deficit Hyperactivity Disorder ("ADHD"), a learning disability, multiple cognitive impairments, and dyslexia (Tr. 217).

### A.  Claimant's Testimony

Claimant offered the following testimony.

She did not remember her house address (Tr. 131).  She was in fourth grade (Tr. 132). At the time of the hearing, she was attending summer camp (Tr. 132).  The summer camp activities included water games and eating popsicles and pizza (Tr. 132).  Participants were also allowed to buy popcorn (Tr. 132).  She enjoyed camp and had made friends with other participants (Tr. 133).  Her favorite food was pizza (Tr. 133).

During the school year, Claimant's favorite subject was Math (Tr. 133). She did not have problems sleeping or eating (Tr. 134). She helped her mother take care of her one-year-old brother (Tr. 134). She also had a 12-year-old brother with whom she played basketball, played video games, and watched television (Tr. 134-135).

### B. Plaintiff's Testimony

Plaintiff reported that after her daughter exhibited reading problems, she enrolled her in Kumon (Tr. 136). She reported that her daughter's most recent testing showed that she was only at first grade level in reading and at kindergarten level in Math (Tr. 136). Her daughter had taken a number of medications for ADHD that worked initially but later had no effect (Tr. 137). Plaintiff characterized the current medication as "hit or miss" (Tr. 137). Aside from Claimant's learning disabilities Plaintiff testified that her daughter was "really evil and defiant and ha[d] mood swings and [broke] things" (Tr. 137). The medication that helped Claimant focus at school caused behavioral problems at home (Tr. 137).

Claimant attended counseling sessions once a week (Tr. 137). The counseling sessions consisted of talk therapy and drawing (Tr. 138). Plaintiff believed that her daughter did not know how to interact appropriately with adult strangers and was receiving counseling in "stranger danger" (Tr. 138). Claimant did not experience vision problems while using glasses (Tr. 138). Testing for dyslexia was negative (tr. 138). Claimant was able to play with her younger brother for a few hours then typically would be "mean" or hit him, requiring Plaintiff to monitor their interactions (Tr. 138). Claimant fought "constantly" with

her older brother (Tr. 139).  The only time Claimant got along with her older brother was when they were playing basketball (Tr. 139).  Due to Claimant's behavioral problems, she was unable to engage in extracurricular school activities (Tr. 139).

In October, 2014, Claimant was  placed in special education for math and reading but was able to do all of the "extracurriculars" in the regular classroom setting (Tr. 140-141). Claimant did not have excessive absences and received academic tutoring twice a week (Tr. 141).  Plaintiff regularly took calls from Claimant's special education teacher to "get some control" over Claimant or to calm Claimant when she "shut[] down" (Tr. 141).

Claimant had to be reminded to bathe but was able to get dressed by herself (Tr. 142). Claimant enjoyed swimming and doing crafts (Tr. 143).  Claimant's chores included cleaning her room, cleaning the kitchen table, and sweeping the floors (Tr. 144).  Aside from keeping her room neat, she performed the household chores without problems (Tr. 144).  She got along well with adults but was "clingy" (Tr. 144).  She did not have a phone or know how to use the internet (Tr. 144).  Claimant's appetite and sleep patterns fluctuated (Tr.  145). Plaintiff opined that her daughter's condition, particularly in terms of mood swings, aggression and defiant behavior was getting worse (Tr. 148).  She noted that Claimant expressed suicidal ideation repeatedly during counseling (Tr. 149).

### C.    Medical and Academic Evidence

### 1. Treating Sources

An April, 2013 special education speech evaluation showed "moderate to severely

reduced intelligibility in connected speech due to phonological processes . . . ." (Tr. 296).

Claimant was easily engaged with a normal syntax and pragmatic language skills (Tr. 296).

She showed an improvement in language skills from the previous year (Tr. 297). The same

month, psychological testing showed typical conversational proficiency for Claimant's grade

level (Tr. 299). Claimant was cooperative but "overly active for her grade" (Tr. 299). Her

intellectual abilities were found to be in the "low average range" (Tr. 299). She showed

some impairment in tasks requiring immediate memory (Tr. 300).    Her math skills were

within normal limits but spelling and sight reading were impaired (Tr. 301). Terrie Harshaw,

Ph.D. determined that Claimant did "not appear to qualify for special education for cognitive

impairment or a learning disability" (Tr. 302, 306). However, she found that Claimant

qualified for speech and language assistance due to a moderate receptive/expressive disorder

and a mild to moderate articulation impairment and deficits in auditory memory (Tr. 306,

309). Academic records note that Claimant, 7, was working below kindergarten level (Tr.

312-313). Ophthalmological records from the same month note Claimant was pleasant,

sociable, and fully oriented (Tr. 315).

October, 2013 pediatric records note that Claimant was not taking any medication (Tr.

428). The same records note that her younger brother had been born earlier the same week

(Tr. 428). November, 2013 academic progress records note that Claimant had made

"outstanding progress toward articulation goals," "steady progress" in improving her

vocabulary, "great progress toward semantic objectives" and "great job" in memory (Tr. 350-

353).  An academic progress report from the following month notes that Claimant experienced problems in Math, Reading, Written Expression, following directions, and in disrupting the class (Tr. 467).  The report notes that Claimant did not exhibit significant antisocial behaviors (Tr. 465-466).

January, 2014 records by Suzanne Peplinski note that Claimant had been diagnosed with ADHD (Tr. 334, 427).  She recommended "additional time for test taking, extra help in the form of tutoring, preferential seating and other tools" to accommodate the diagnosis (Tr. 334).  Kumon records from the following month show below average scores in Math and Language Arts (Tr. 336-337).  April, 2014 ophthalmological records note that Claimant was fully oriented, pleasant, and sociable (Tr. 319).  Dr. Peplinski's records from the same month note Plaintiff's report that Claimant was doing better on medication but had been "a little 'mean' in the last couple of days" (Tr. 425).  Plaintiff reported later the same month that the medication wasn't working (Tr. 423).

May, 2014 speech and language tutoring records note a moderate articulation disorder and moderate expressive language impairment (Tr. 343).  Claimant's receptive language skills were deemed "approaching age-appropriate levels" but expressive skills were significantly delayed due to grammatical errors (Tr. 343, 349).  She was referred for speech and language intervention one to two times a week for 30 minutes (Tr. 349).   The same month, Claimant's teacher, Deborah Ross, noted that Claimant's reading and math skills were a full grade below her actual grade level and written language skills were two grades

below the actual grade level (Tr. 237).  She found "very serious problem[s] in the domains of Acquiring and Using Information (Tr. 238) and in Attending and Completing Tasks (Tr. 239).

A July, 2014 assessment by Michael Behen, Ph.D. noted a history of speech therapy (Tr. 394-395, 486).  Plaintiff reported that her long-term boyfriend had moved out in the previous year (Tr. 395).  The family received food and medical assistance (Tr. 395).  Plaintiff described Claimant as "social" but that she exhibited aggressiveness after she began taking prescription medication (Tr. 395).  Claimant exhibited anxiety starting in 2013 (Tr. 395).

Dr. Behen noted a normal affect with an anxious mood (Tr. 395).  Claimant exhibited average or low average scores in all areas of verbal comprehension except for extremely low scores in perceptual reasoning and borderline scores in block design, matrix reasoning, and spelling (Tr. 396).  Plaintiff rated Claimant's psychological and social problems as largely borderline or "clinically significant" (Tr. 397).  Dr. Behen noted that Plaintiff's description of her daughter's behavioral, functional, and social problems showed a greater degree of dysfunction than reflected in the clinical testing (Tr. 398).  He recommended treatment for ADHD (Tr. 399).

November, 2014 school records show that Claimant received Cs in all academic courses but received An A in Art, Music, and Gym (Tr. 358-359).  Her academic skills were deemed "developing" (Tr. 358-359).  Independent Education Program ("IED") records note that Claimant was "friendly" and wanted "to do well to please her teachers" (Tr. 370).

Reading and Writing skills were deemed below average and Math skills were deemed "low" (Tr. 371). Suggested supplementary aids including allowing Claimant to answer orally rather than in writing, assignment reduction by 50 percent, clarifying instructions, and sitting near the teacher (Tr. 376-378). Evaluation records by special education specialist Alisha K. Byrd note that while Claimant was initially cheerful, she became dejected when faced with more challenging tasks (Tr. 384). Her verbal comprehension scores and in processing of visual material were in the average range and nonverbal reasoning and sustain attention, low average (Tr. 385). Her cognitive abilities were classified as low average; verbal comprehension, average; perceptual reasoning, low average; working memory, low average; and general processing, average (Tr. 393). Claimant did not meet the criteria for special education placement (Tr. 380).

In June, 2015, pediatric records by George L. Blum, M.D. note Plaintiff's report that Claimant had talked about killing herself (Tr. 412). Dr. Blum observed that Claimant "smiled constantly" and played with a ball during the examination (Tr. 412). July, 2015 records by Dr. Blum note that Claimant "talke[d] well" and was "calm" (Tr. 415). In August, 2015, Dr. Behen performed additional cognitive testing, noted Plaintiff's report that Claimant had difficulty making friends and was argumentative and aggressive (Tr. 402, 495-496). Claimant's clinical scores were similar to those from the previous year (Tr. 401-407). Dr. Behen again noted that Plaintiff's account of her daughter's functioning was not reflected in the clinical testing (Tr. 408, 499). Based on the clinical scores, Claimant's presentation,

and Plaintiff's description of her daughter's behavior, he diagnosed Claimant with Disruptive Mood Dysregulation Disorder, ADHD, and Specific Disorder in Learning with Impairments in Written Expression and Mathematics (Tr. 408, 499).

In October, 2015, Claimant's resource teacher Monique Jackson completed a questionnaire, finding very serious problems in Acquiring and Using Information (Tr. 274); serious problems in Attending and Completing Tasks (Tr. 275); very serious problems in Interacting and Relating With Others (Tr. 276); and very serious problems in Caring For Himself or Herself (Tr. 278).

### 2. Non-Treating Sources

In June, 2014, Terrance A. Mills, Ph.D. examined Claimant on behalf of the SSA, noting Plaintiff's report of Claimant's "limited benefit" from Concerta and Intuniv (Tr. 355). Plaintiff denied that Claimant had been involved in mental health counseling or been hospitalized for behavior issues (Tr. 355). Plaintiff reported that Claimant's appetite was inconsistent but she had normal sleep patterns (Tr. 355). She reported that Claimant was prone to outbursts which included yelling and hitting (Tr. 356). She reported that Claimant required supervision in caring for her personal hygiene (Tr. 356).

Dr. Mills noted that Claimant had good hygiene and grooming and was "friendly," responsive, reserved, and cooperative (Tr. 356). Claimant had full orientation with normal speech and normal psychomotor activity with no symptoms of ADHD (Tr. 356). Claimant could do serial fives but was unable to perform one-digit math equations (Tr. 356). Dr. Mills

noted that March, 2013 testing placed Claimant in the low average range of intellectual functioning (Tr. 357). He diagnosed Claimant with unspecified ADHD, Oppositional Defiant Disorder ("ODD"), and unspecified bipolar disorder (Tr. 357).

In July, 2014, Zara Khademian, M.D., along with speech pathologist Cheryl Lang, S.L.P. performed a non-examining review of the treating and academic records on behalf of the SSA, finding less than marked limitation in the domains of Acquiring and Using Information; Attending and Completing Tasks; Interacting and Relating With Others; Caring For Yourself; and Health and Physical Well-Being (Tr. 159-161). They found no limitation in the domain Moving About and Manipulation of Objects (Tr. 159-161). Dr. Khademian found "some limitations in the ability to function," but that the limitations were "not severe enough to be considered disabling" (Tr. 162-163).

### D. The ALJ's Decision

Citing the medical and academic records, ALJ Gasparovich found that Claimant experienced the severe impairments of "articulation disorder; expressive language impairment; [ADHD]; and a specific learning disorder in Written Expression and Mathematics" but that none of the conditions met or medically equaled any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 103-105). She found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 111-112). In the domain of "Attending and Completing Tasks," she found "less than marked limitation" (Tr. 114-115). In the domain of "Interacting and Relating to Others," the

-10-

ALJ also found that Claimant had "less than marked" limitations (Tr. 115-116). The ALJ found no limitations in the domain of "Moving About and Manipulating Objects" (Tr. 117). The ALJ found less than marked limitations in the domain of "Caring for Yourself" (Tr. 118) and less than marked limitations in "Health and Physical Well-Being" (Tr. 119).

Citing the medical records, the ALJ noted that while the record showed some evidence of cognitive deficits, behavioral problems, and academic difficulties, the record did "not support the degree of functional limitation alleged" by Plaintiff (Tr. 112). The ALJ noted that despite intelligence scores showing low average or borderline intelligence, Claimant was described as friendly and performed well in Art, Music, and Gym (Tr. 112). The ALJ noted that Claimant was able to attend a daytime summer camp without special supervision (Tr. 112).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

### **Childhood Benefits**

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[1] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

---

[1]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added).   20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

### A.   The Domains of Acquiring and Using Information and Attending and Completing Tasks

Plaintiff argues first, in effect, that the May, 2015 and October, 2015 assessments by Claimant's teachers Deborah Ross and Monique Jackson respectively supported a finding of

-13-

extreme limitation in the domains of Acquiring and Using Information and Attending and Completing Tasks. *Plaintiff's Brief,* 10-11, *Docket #19,* Pg ID 600.

In childhood disability claims, a marked limitation is defined as follows:

> (i) We will find that you have a marked limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. Marked limitation also means a limitation that is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2) (internal quotations omitted).

An extreme limitation is defined as follows:

> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. Extreme limitation also means a limitation that is more than marked. . . . However, extreme limitation does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416.926a(e)(3).

## 1. Acquiring and Using Information

Section 416.926a(g)(3) contains a non-exhaustive list of signs of impairment in Acquiring and Using Information:

> (i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night. (ii) You cannot rhyme words or the sounds in words. (iii) You have difficulty recalling important things you learned in school yesterday. (iv) You have difficulty solving mathematics

questions or computing arithmetic answers. (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

However, the mere presence of these limitations does not imply that they are marked or extreme. § 416.926a(f)(3). Instead, determination of whether these impairments are marked or extreme depends upon the available evidence in each case. *Id.*

Substantial evidence supports the ALJ's finding that the limitation in Acquiring and Using Information was less than marked (Tr. 113-114). She noted that Claimant timely achieved her early developmental milestones (Tr. 114). She acknowledged that while that Claimant's academic grades were generally low, she obtained good grades in Music, Art, and Gym (Tr. 114). She cited Ms. Adu's finding of only a moderate articulation disorder (Tr. 110-11, 114) and Dr. Mills' consultative finding that while Claimant had trouble with mathematical calculations, she could recite the alphabet and recognize numbers, letters, body parts, colors, and shapes (Tr. 114).

Elsewhere in the determination, the ALJ accorded only some weight to the opinions of teachers Ross and Jackson, noting that they were "lay rather than medical opinions and provide[d] only a partial portrait" of Claimant's condition[2] (Tr. 111). The ALJ accorded significant weight to the non-examining findings of Drs. Khademian and Lang (a speech

---

[2]Further, neither Ross nor Jackson found that Claimant experienced exclusively "very serious" limitation in Acquiring and Using information. Ross found very serious problems in four out of ten categories in this domain and Jackson found six out of ten (Tr. 238, 274)

pathologist) who found less than marked limitation in this domain (Tr. 110, 159).  While the ALJ's adoption of these findings, standing alone, support her conclusion of less and marked limitation, the ALJ noted that the pediatric records showed only conservative management for the condition of ADHD (Tr. 112).  The ALJ cited school reports describing Claimant as "'friendly' and quick to warm up to teachers" (Tr. 112).  Because the ALJ's finding of less than marked limitation in this domain is well supported and explained, a remand on this basis is not warranted.

### 2.  Attending and Completing Tasks

The ALJ's finding that Claimant's limitation in Attending and Completing Tasks was less than marked is also well supported and explained.   Signs of impairment in this domain include the following:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch. (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects. (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others. (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing. (v) You require extra supervision to keep you engaged in an activity. § 416.926a(h)(3).

In supporting the conclusion that Claimant experienced less than marked limitation in this domain, the ALJ noted that  Ross' findings ranged from no limitation  to very serious limitations in a few categories and Jackson found the absence of very serious limitation (Tr. 115, 239, 275).  The ALJ cited Dr. Behen's August, 2015 report that Claimant had "mostly

good attention" with encouragement and redirection and successfully completed a number

of tasks (Tr. 115).  Elsewhere, the ALJ noted that the finding of less than marked limitation

in this domain was supported by the non-examining assessment by Drs. Khademian and Lang

(Tr. 112, 159-161).

In summary, although Plaintiff relies on her own characterization of her daughter's

problems and the findings of teachers Ross and Jackson, substantial evidence otherwise

supports the ALJ's finding of less than marked limitation in the first two domains.

### B.   An Updated Opinion on Functional Equivalency

Citing SSR 96-6p, Plaintiff contends that the July, 2014 findings of non-disability by

Drs. Khademian and Lang are in effect rendered moot by the subsequently created evidence

pointing to a finding of disability.  *Plaintiff's Brief* at 13-14 (*citing* 1996 WL 374180 (July

2, 1996)).

This argument fails for two reasons.  First, "SSR 96–6p, which requires an ALJ to

obtain an updated medical expert opinion under certain circumstances, does not apply when

an ALJ is considering whether a child's impairment functionally equals a listing."*Johnson*

*v. Commissioner of Social Sec.*, 2014 WL 4798963, at *9, FN 7 (E.D.Mich. September 26,

2014)(Grand, M.J.).  SSR 09–1p states that "'While SSR 96–6p requires that an ALJ ... must

obtain an updated medical expert opinion before making a decision of disability based on

medical equivalence, there is no such requirement for decisions of disability based on

functional equivalence'" as found in childhood disability cases. *Id.* (*citing* 2009 WL 396031,

at *12).  "'Therefore, ALJs are not required to obtain updated medical expert opinions when they determine that a child's impairment(s) functionally equals the listings.'" *Id.* (internal punctuation omitted).  "In other words, SSR 96–6p can require a medical expert to provide a fresh review of the record when medical equivalence is at issue, but it does not apply to the functional equivalence analysis." *Id.* (*citing Edwards v. Colvin,* 2013 WL 3934228, at *5 (N.D.Ill. July 30, 2013)).

Second, the current record does not require an updated assessment.  Plaintiff argues that Drs. Khademian and Lang's assessment is invalidated by the more recent records including the assessments by Ross and Jackson and the pediatric records which were not part of the record at the time of the July, 2014 assessment.  However, Drs. Khademian and Lang completed their non-examining assessment in July, 2014 and the most recent evidence post-dates the assessment by only 15 months.  The records submitted subsequent to the July, 2014, like the earlier evidence, contain evidence both supporting and detracting from the disability claim.

November, 2014 school records describe Claimant's academic skills as "developing" and that Claimant made efforts to please her teacher (Tr. 358-359, 370).  Claimant was found not to meet the criteria for special education placement 380, 393).  While June, 2015 pediatric records state that Claimant expressed suicidal ideation at one point, the followup records from the following month noted a normal affect and mood (Tr. 412-415).  Dr. Behen noted in August, 2015 that the test scores had not changed significantly from the previous

year (401-407).

Aside from the fact that substantial evidence created after the July, 2014 assessment supports a non-disability finding, the ALJ considered and discussed all of the newer records at length (Tr. 108-112).  My own review of the same records show that the ALJ provided an accurate account of the newer evidence.  As such, a remand on this basis is not warranted.

### C.  SSR 09-1p

For overlapping reasons, Plaintiff's argument that the ALJ did not consider "the extensive help" that Claimant "requires to get through her school day" is not well taken. *Plaintiff's Brief* at 14.   Plaintiff faults the ALJ for failing to give heightened consideration to the IEP reflecting the accommodations Claimant required over the course of the school day. *Id.* at 15.

Contrary to Plaintiff's contention, the ALJ acknowledged the IEP multiple times in the administrative opinion.  The ALJ made reference to the 2013 IEP qualifying Claimant for speech and language services, shortened assignments, addtional time for completion of assignments, and extra encouragement (Tr. 107).  She later noted first that Claimant received "a variety of accommodations, including extra time to finish assignments, reduced workload, and additional breaks" in addition to biweekly speech and language services (Tr. 109).  In determining that Claimant had less than marked limitation in Attending and Completing Tasks, the ALJ once again noted that Claimant had an IEP (Tr. 115).  Plaintiff's criticism appears to be based solely on the omission of reference to the IEP in the section devoted to

her conclusions regarding the domain of Acquiring and Using Information.   However, because these conclusions are prefaced by a thorough discussion of the IEP, the ALJ was not required to cite the IEP yet another time in summarizing her reasons why Claimant experienced less than marked limitation in that domain. To the contrary, the ALJ provided a comprehensive and accurate account of the evidence supporting the non-disability finding.

Because the ALJ's determination that Claimant was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing it should not be disturbed by this Court.   *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #22] be GRANTED, and  that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


                                    s/ R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE
Dated: July 31, 2018




                              CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of
record on July 31, 2018, electronically and/or by U.S. mail.

                                    s/Carolyn M. Ciesla
                                    Case Manager to the
                                    Honorable R. Steven Whalen